1  PHILLIP A. TALBERT
   United States Attorney
2  VICTORIA L. BOESCH
   Assistant United States Attorney
3  501 I St., Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2700

5  Attorneys for Veterans Affairs Secretary

6

7                    UNITED STATES DISTRICT COURT

8                   EASTERN DISTRICT OF CALIFORNIA

9

10  KELLY DEVINE,                          )  Case No. 2:17-cv-02331-TLN-AC
                                           )
11                  Plaintiff,             )  **MEMORANDUM OF POINTS AND**
                                           )  **AUTHORITIES SUPPORTING**
12  v.                                     )  **SECRETARY'S MOTION FOR**
                                           )  **SUMMARY JUDGMENT**
13  DENIS MCDONOUGH, Secretary of Veterans )
    Affairs,                               )  **DATE:  DECEMBER 15, 2022**
14                                         )  **TIME:   2:00 P.M.**
                    Defendant.             )  **DEPT.:  Courtroom 2, 15 Floor**
15                                         )  **JUDGE: Hon. Troy L. Nunley**
                                           )
16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ......................................................................................................... 1

   A. Factual Background .............................................................................................. 1

   B. Administrative Proceedings ................................................................................. 5

   C. Devine's Federal Court Complaint ...................................................................... 6

III. SUMMARY JUDGMENT STANDARD ................................................................. 6

IV. ANALYSIS .............................................................................................................. 7

   A. The VA treated Devine just like other temporary counselors when it did not
      offer her a permanent position because she failed to meet productivity targets ..................... 7

   B. Devine's sexual harassment claim is time-barred and also fails because
      her work environment was not hostile, and the VA took reasonable care
      to prevent harassment ........................................................................................... 8

      1. Devine's sexual harassment claim is time-barred because the only
         gender-based harassing conduct she alleges was more than a year
         before her EEO complaint ............................................................................. 8

      2. Devine's hostile environment claim fails because the alleged harassment
         was not severe or pervasive enough to create a discriminatorily hostile
         work environment ......................................................................................... 11

         a) The alleged harassment consisted of innocuous incidents during
            six months in 2014 that did not alter the conditions of Devine's
            employment .......................................................................................... 12

      3. Devine's hostile environment claim also fails because the VA took reasonable
         care to prevent harassment and provided opportunities to report it ................................ 17

   C. Devine's retaliation claim fails because Reeves was unaware of any protected
      activity and did not offer her a permanent job because she fell below productivity
      standards ............................................................................................................... 18

      1. Devine's retaliation claim fails because she cannot show a causal link
         between any protected activity and the decision not to offer her a
         permanent job .............................................................................................. 19

      2. Devine's failure to meet productivity standards for counselors is a legitimate
         non-retaliatory reason for Reeves' decision not to offer her a permanent job ................. 20

V. CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

Page

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................................. 7

*Anderson v. Reno*,
190 F.3d 930 (9th Cir. 1999) .................................................................................... 16

*Berry v. Dep't of Soc. Servs.*,
447 F.3d 642 (9th Cir. 2006) ...................................................................................... 8

*Brown v. Dignity Health*,
No. CV-18-03418-PHX-JJT, 2020 WL 3403088 (D. Ariz. June 19, 2020) ............... 9

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998) ................................................................................................ 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................... 6, 7

*Cohen v. Fred Meyer, Inc.*,
686 F.2d 793 (9th Cir. 1982) .................................................................................... 20

*Dominguez-Curry v. Nevada Transp. Dep't*,
424 F.3d 1027 (9th Cir. 2005) ............................................................................ 10, 13

*Draper v. Coeur Rochester*,
147 F.3d 1104 (9th Cir. 1998) .................................................................................. 16

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) ..................................................................................... 13, 17, 18

*Fried v. Wynn Las Vegas, LLC*,
18 F.4th 643 (9th Cir. 2021) ............................................................................... 12, 15

*Gomez-Perez v. Potter*,
553 U.S. 474 (2008) ................................................................................................ 19

*Green v. Brennan*,
578 U.S. 547 (2016) ................................................................................................ 19

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993) ............................................................................................ 12, 15

*Hollinger v. Titan Capital Corp.*,
  914 F.2d 1564 (9th Cir. 1990) ............................................................................. 7

*Holly D. v. California Institute of Technology*,
  339 F.3d 1158 (9th Cir. 2003) ........................................................................... 11

*In re Oracle Corp. Sec. Litig.*,
  627 F.3d 376 (9th Cir. 2010) ............................................................................... 7

*Johnson v. U.S. Treas. Dep't*,
  27 F.3d 415 (9th Cir. 1994) ........................................................................... 9, 10

*Kortan v. California Youth Authority*,
  217 F.3d 1104 (9th Cir. 2000) ..................................................................... 15, 16

*Lyons v. England*,
  307 F.3d 1092 (9th Cir. 2002) ..................................................................... 9, 10

*Manatt v. Bank of America*,
  379 F.3d 792 (9th Cir. 2003) ............................................................................. 16

*Maner v. Dignity Health*,
  9 F.4th 1114 (9th Cir. 2021) ....................................................... 11, 12, 19, 20

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ....................................................................................... 6, 7

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ......................................................................................... 8, 19

*McGinest v. GTE Serv. Corp.*,
  360 F.3d 1103 (9th Cir. 2004) ..................................................................... 12, 13

*Moore v. King Cty. Fire Prot. Dist. No. 26*,
  No. C05-442JLR, 2005 WL 2898065 (W.D. Wash. Oct. 31, 2005) .................... 10

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002) ................................................................................ 9, 10, 16

*Nichols v. Azteca Rest. Enters.*,
  256 F.3d 864 (9th Cir. 2001) ............................................................................. 16

*Oncale v. Sundowner Offshore Servs., Inc.*,
  523 U.S. 75 (1998) ............................................................................................. 13

*Porter v. Cal. Dep't of Corr.*,
  419 F.3d 885 (9th Cir. 2005) ............................................................. 9, 10, 11, 13

*Ray v. Henderson*,
  217 F.3d 1234 (9th Cir. 2000) ............................................................. 13

*Rekow v. Sebelius*,
  No. CIV 10–8156–PCT–PGR, 2011 WL 1791272 (D. Ariz. May 11, 2011) ................................... 10

*Stegall v. Citadel Broad. Co.*,
  350 F.3d 1061 (9th Cir. 2003) ............................................................. 19

*Vasquez v. County of Los Angeles*,
  349 F.3d 634 (9th Cir. 2003) ............................................................. 8, 16

*Villiarimo v. Aloha Is. Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ............................................................. 19

*Westendorf v. W. Coast Contractors of Nevada, Inc.*,
  712 F.3d 417 (9th Cir. 2013) ............................................................. 19

*White v. Gen. Servs. Admin.*,
  652 F.2d 913 (9th Cir. 1981) ............................................................. 19

*Wool v. Tandem Computers*, Inc.,
  818 F.2d 1433 (9th Cir. 1987) ............................................................. 7

**Statutes**

42 U.S.C. § 2000e-3(a) ............................................................. 19

42 U.S.C. § 2000e-16(a) ............................................................. 7

**Rules**

Fed. R. Civ. P. 56(a) ............................................................. 6

Fed. R. Civ. P. 56(c) ............................................................. 7

**Regulations**

29 C.F.R. §§ 1614.103(a) ............................................................. 9, 10

29 C.F.R. §1614.105(a)(1) ............................................................. 10

# I. INTRODUCTION

Plaintiff Kelly Devine filed this employment discrimination action in connection with her previous employment as a Readjustment Counselor for the Department of Veterans Affairs. She asserts claims against the Veterans Affairs Secretary under Title VII of the Civil Rights Act of 1964 for gender-based disparate treatment discrimination, sexual harassment, and retaliation for protected activity. Those claims fail as a matter of law. Devine's disparate treatment claim fails because she was treated the same as other similarly situated readjustment counselors when she did not get a permanent job because she failed to meet counseling productivity standards. Her sexual harassment claim is time-barred because all the alleged harassment by her supervisor occurred outside the statute of limitations. And that claim also fails because the acts she alleges were not severe or pervasive. They generally consist of isolated and innocuous interactions insufficient to permeate her workplace with "discriminatory intimidation, ridicule, and insult" so as to violate Title VII. The VA also took reasonable care to provide an effective means to report and prevent sexual harassment. Devine nonetheless failed to report any of the alleged harassment when it happened. Finally, Devine's retaliation claim fails because the manager who decided not to offer her a permanent job did not know about any protected activity by Devine and so could not have retaliated against her for such activity. Accordingly, the Court should grant summary judgment for the Secretary on all Devine's claims.

# II. BACKGROUND

## A. Factual Background

Kelly Devine began working at the Sacramento Veterans Center as a Readjustment Counselor for the Department of Veterans Affairs Readjustment Counseling Services in June 2014. Dkt. 12 at 1-2; Boesch Decl. Exh. 1 (Devine Depo. 13:13-16). She was a temporary employee, initially appointed for a one-year term, after which she was appointed for a second, one-year term. Boesch Decl. Exh. 1 (Devine Depo. 16:5-25, 90:10-25, 143:23-25), Exh. 2 (Reeves Depo. 23:23-24:10, 34:2-20), Exh. 3 (Molina Depo. 15:17-16:4), Exh. 4 (Inman Decl.). As a Readjustment Counselor, Devine provided individual and group therapy to veterans and their families and conducted outreach services for veterans. Boesch Decl. Exh. 1 (Devine Depo. 17:1-16). Sacramento Veterans Center's mission was to provide counseling services directly to veterans, and Devine understood that. Boesch Decl. Exh. 1 (Devine Depo. 24:5-19);

Reeves Decl. ¶ 8.

From June 2014 through November 2014, Michael Molina was the director (team leader) at the Sacramento Veterans Center and Devine's supervisor. Boesch Decl. Exh. 3 (Molina Depo. 13:18-14:7, 15:8-10); Molina Decl. ¶¶ 2, 4. As director, Molina supervised the clinical staff (eight or nine counselors) at the Vet Center, which provided readjustment counseling for veterans coming home from combat or off active duty. Boesch Decl. Exh. 3 (Molina Depo. 14:3-24); Molina Decl. ¶ 3. Molina was deployed for a military assignment in Cuba from January through December 2015. Boesch Decl. Exh. 3 (Molina Depo. 31:12-20); Molina Decl. ¶ 5. Molina was away from the Sacramento Vet Center during that time, and Devine had no contact with him until he returned to the office after his deployment. Boesch Decl. Exh. 1 (Devine Depo. 29:23-30:7, 31:23-32:7, 61:18-24). From December 2014 through January 2016, Doye Sivils was Devine's supervisor. Boesch Decl. Exh. 1 (Devine Depo. 143:6-9); Molina Decl. ¶ 5. Molina returned to work as the director of the Sacramento Vet Center in February 2016. Boesch Decl. Exh. 3 (Molina Depo. 31:12-20); Molina Decl. ¶ 5.

Steven Reeves was Regional Manager for Region 4B of the Veterans Center Program of the Department of Veterans Affairs during the 2014 to 2016 timeframe. Boesch Decl. Exh. 2 (Reeves Depo. 13:13-18). At that time, Reeves supervised more than forty team leaders who ran individual Veterans Centers, including Molina. Boesch Decl. Exh. 2 (Reeves Depo. 13:19-14:18). Reeves did not socialize with Molina outside work. Boesch Decl. Exh. 2 (Reeves Depo. 19:4-7). Reeves never met Devine while Devine worked at the Department of Veterans Affairs. Boesch Decl. Exh. 2 (Reeves Depo. 23:4-7), Exh. 1 (Devine Depo. 161:17-20).

Throughout this time, Reeves was familiar with the applicable policy of preventing sexual harassment in the workplace – the VA Northern California Healthcare System policy "Prevention of Workplace Harassment to Include Sexual Harassment." Boesch Decl. Exh. 2 (Reeves Depo. 47:8-12, 55:22-56:9); Reeves Decl. ¶ 3 & Exh. 1 (Reeves Depo. Exh. C). And when he was Regional Manager, Reeves received allegations of sexual harassment against Vet Center team leaders. Boesch Decl. Exh. 2 (Reeves Depo. 56:10-13); Reeves Decl. ¶ 4. Upon receiving such allegations, Reeves removed the Vet Center team leader from the center at issue, having the person work from another location until the allegations had been investigated. Once the allegations were substantiated or not substantiated, Reeves

took disciplinary action if appropriate. Boesch Decl. Exh. 2 (Reeves Depo. 56:10-57:8); Reeves Decl. ¶ 4. Reeves never received an allegation that Molina had sexually harassed anyone. Boesch Decl. Exh. 2 (Reeves Depo. 57:9-11), Exh. 1 (Devine Depo. 34:16-36:17); Reeves Decl. ¶ 5. If Reeves had received such an allegation, he would have removed Molina from the Sacramento Vet Center and instituted an investigation, as was his practice. Boesch Decl. Exh. 2 (Reeves Depo. 57:9-14); Reeves Decl. ¶ 5.

In April 2016, Devine filed an anonymous, online complaint with the Veterans Affairs Office of the Inspector General (OIG) about Molina viewing pornography in the workplace. Boesch Decl. Exh. 1 (Devine Depo. 98:16-100:3), Exh. 2 (Reeves Depo. 21:4-8). Molina was not aware that Devine had filed this complaint. Boesch Decl. Exh. 1 (Devine Depo. 98:16-100:3), Exh. 5 (Devine Depo Exh. F), Exh. 3 (Molina Depo. 38:15-39:4). Readjustment Counseling Service Regional Manager Reeves was made aware of the complaint in early April 2016, but he did not know who had filed the anonymous complaint. Boesch Decl. Exh. 2 (Reeves Depo. 21:4-8). Reeves only learned much later, during the EEO process, that Devine was the one who made the complaint. Boesch Decl. Exh. 2 (Reeves Depo. 22:16-23:1); Reeves Decl. ¶ 6.

In early April 2016, Reeves assigned Associate Regional Manager for Administration, Region 4B Christopher Selby to conduct a fact-finding investigation regarding the anonymous complaint's allegations. Boesch Decl. Exh. 2 (Reeves Depo. 21:25-22-7); Reeves Decl. ¶ 7 & Exh. 2 (Reeves Depo. Exh. B). Reeves never spoke to Molina regarding the investigation. Boesch Decl. Exh. 2 (Reeves Depo. 22:8-11); Reeves Decl. ¶ 7. Reeves received a May 10, 2016, report from Selby regarding the fact-finding investigation. Boesch Decl. Exh. 2 (Reeves Depo. 21:25-22-7, 53:15-55:11); Reeves Decl. ¶ 7 & Exh. 2 (Reeves Depo. Exh. B). That report summarized Selby's investigation, for which he had interviewed 10 Sacramento Vet Center employees. Selby asked each of the employees whether they knew of anyone looking at inappropriate material on any computer. Reeves Decl. Exh. 2 (Reeves Depo. Exh. B). Though it identified the 10 people who had been interviewed, the report did not attribute reported information to any specific individuals. *Id.* The report stated that one employee reported only hearsay, stating that they had not seen anything personally, and that person declined to name anyone. *Id.* A second employee said that they had glimpsed something that they would not view in the workplace, but they declined to say whose computer it had been on and stated that it was not an

indicator of everyday Vet Center activity. *Id.* A third reported that they had seen inappropriate material being viewed by Molina in the workplace. *Id.* That person said that the material was of an adult nature, that it was in full view from the doorway when walking by Molina's office, and that there was no attempt to hide it. *Id.* Because the person had reported seeing the material from Molina's office doorway, Selby visited Molina's office. He observed that Molina's desk was oriented in a manner that prevented a person from seeing a laptop or desktop screen from the doorway. Selby noted that this was consistent with protecting client information and that this furniture placement was consistent with other Vet Centers. Selby also got confirmation from Molina and from another employee that his office furniture placement had not changed. *Id.* The report concluded that the allegation that Molina viewed inappropriate material during work at the Vet Center could not be substantiated based on the available evidence. *Id.* Reeves reviewed Selby's report and concluded from it that the anonymous allegations about Molina viewing pornography in the workplace were not supported. *Id.* He therefore took no further action. *Id.*

In May 2016, Molina asked Reeves to make three Sacramento Vet Center temporary readjustment counselors – Lee Field, Krista Van Zeyl, and Kelly Devine – permanent employees. Boesch Decl. Exh. 2 (Reeves Depo. 24:20-25:4, 34:22-35:13), Exh. 3 (Molina Depo. 28:2-30:23); Reeves Decl. ¶ 8; Molina Decl. ¶ 9. Despite Molina's request, Reeves decided not to offer Field or Devine permanent positions because neither of them had met productivity standards for counselors. Boesch Decl. Exh. 2 (Reeves Depo. 25:5-27:5, 28:22-29:9); Reeves Decl. ¶ 8. Of the three, only Van Zeyl had met those standards, so Reeves decided to offer only Van Zeyl a permanent position. Boesch Decl. Exh. 2 (Reeves Depo. 47:8-12, 48:2-51:7), Exh. 3 (Molina Depo. 43:22-44:22); Reeves Decl. ¶ 8 & Exh. 3 (Reeves Depo. Exh. A). The productivity standards, which applied to readjustment counselors throughout the region, required that at least fifty percent of a counselor's time be spent providing direct services to veterans, with those hours spent on a combination of individual and group therapy. Boesch Decl. Exh. 2 (Reeves Depo. 25:5-27:5, 29:10-13); Reeves Decl. ¶ 8. These standards were very important because providing counseling services directly to veterans was the Veterans Center's mission, and the standard ensured that counselors' time was appropriately dedicated to fulfilling that mission. Boesch Decl. Exh. 2 (Reeves Depo. 51:22-53:7); Reeves Decl. ¶ 8.

In late May 2016, Devine received a letter informing her that her temporary appointment with the Department of Veterans Affairs would expire effective June 1, 2016. Boesch Decl. Exh. 1 (Devine Depo. 162:4-23), Exh. 6 (Devine Depo. Exh. G). That letter informed her that she had completed the maximum amount of time allowed under temporary appointments (two years). *Id.*; *see also* Boesch Decl. Exh. 4 (Inman Decl.).

Devine's employment as a Readjustment Counselor ended on June 1, 2016, when her temporary appointment expired. Boesch Decl. Exh. 7 (Devine Depo. Exh. D), Exh. 1 (Devine Depo. 162:4-23), Exh. 6 (Devine Depo. Exh. G).

**B.      Administrative Proceedings**

Devine initially contacted an EEO counselor on June 22, 2016, and she filed a formal Complaint of Employment Discrimination on August 17, 2016. Boesch Decl. Exh. 1 (Devine Depo. 26:13-22, 28:8-23), Exh. 7 (Devine Depo. Exh. D). Her complaint concerned actions by her supervisor Mike Molina during the June 1, 2014, to November 2014, timeframe. Boesch Decl. Exh. 7 (Devine Depo. Exh. D). It also identified events in March and May 2016. *Id.*

Devine's complaint alleged that, during the first six months of her employment (June to November 2014), Molina asked Devine via text message to meet him at a hotel in Reno, stating that there was a hot tub in the room, and that she declined. She alleged that Molina asked her to join him for lunch and/or coffee but did not invite other staff. And she alleged that Molina texted her that he was trying to terminate a permanent employee so that he could put Devine (a term employee) into the permanent position. Boesch Decl. Exh. 7 (Devine Depo. Exh. D). Devine did not report any of this before she contacted an EEO counselor in late June 2016, after her employment ended. Boesch Decl. Exh. 1 (Devine Depo. 26:13-22, 28:8-29:1, 34:16-36:17), Exh. 7 (Devine Depo. Exh. D), Exh. 8 (Devine Depo Exh. E).

Devine's complaint also alleged that, nine months later in March 2016, Molina made various statements to a Program Support Assistant, including that Devine had no tact, that she was too stupid to put her leave in correctly, that she was replaceable, and that she was bullying. Boesch Decl. Exh. 7 (Devine Depo. Exh. D). A month later, Devine provided information to an Assistant Regional Manager, Chris Selby, who was doing a fact-finding investigation into an anonymous tip that Molina had viewed

pornography in the office. *Id.*; *see also* Reeves Decl. Exh. 2 (Reeves Depo. Exh. B). Devine reported to Selby that she had seen sexual images on Molina's computer screen. Boesch Decl. Exh. 7 (Devine Depo. Exh. D). A month after that, in May 2016, Molina informed Devine that she would not be offered a permanent position. *Id.* A few days before her temporary position ended, Devine called Assistant Regional Manager Patrick Carrow to ask the outcome of the investigation into Molina viewing pornography in the office. He told her that there were incongruent reports and the investigation concluded that the accusations were unfounded. *Id.*

**C.      Devine's Federal Court Complaint**

Devine filed suit in federal court seeking to bring Title VII and state-law claims against the Veterans Affairs Secretary and against Molina. Dkt. 12. The Court dismissed her state-law claims (claims three, five, and seven in her First Amended Complaint), and all her claims against Molina. Dkt. 24 at 9. Because Devine failed to file a Second Amended Complaint, the Secretary filed an Answer to the four remaining claims in the First Amended Complaint (claims one, two, four, and six against the Secretary). Dkt. 25, Dkt. 26. The operative claims in Devine's First Amended Complaint assert the following claims against the Secretary under Title VII: gender discrimination (claim one), sexual harassment (claim two), retaliation (claim four), and wrongful termination (claim six). Dkt. 12, Dkt. 24, Dkt. 25, Dkt. 26.

## III.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 aims to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) Advisory Committee Note on 1963 amendments). Initially, the moving party bears the burden of identifying those portions of the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an *absence of evidence* to support the non-moving party's case." *In re Oracle Corp.*

*Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 325) (emphasis added). Accordingly, a court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Once the moving party meets its initial burden, the responsibility then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *See Matsushita*, 475 U.S. at 586. The opposing party may not rely upon pleadings' allegations but must tender evidence of specific facts in the form of affidavits and/or admissible discovery material. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must also demonstrate that a disputed fact is material, i.e., one that makes a difference in the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And the opposing party must show that the dispute is genuine, i.e., that a reasonable trier of fact could return a verdict for the opposing party. *See Wool v. Tandem Computers*, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990) (en banc). While the court draws all reasonable inferences in favor of the opposing party, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. ANALYSIS

The Veterans Affairs Secretary (the "Secretary" or the "VA") seeks summary judgment on all claims in Devine's complaint.

**A.** **The VA treated Devine just like other temporary counselors when it did not offer her a permanent position because she failed to meet productivity targets.**

In claim one of her First Amended Complaint, Devine asserts a Title VII disparate treatment sex discrimination claim alleging that her employment contract was not renewed because of her gender. Dkt. 12 at 5-6.

Title VII makes it unlawful for a federal employer to discriminate against an individual because of her gender. 42 U.S.C. § 2000e-16(a). To establish a prima facie case of disparate treatment discrimination under Title VII, Devine must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) similarly

situated individuals outside her protected class were treated more favorably. *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 656 (9th Cir. 2006). If Devine does so, the VA must then articulate a legitimate, non-discriminatory reason for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The burden then shifts back to Devine to show that the VA's proffered reason is a pretext for illegal discrimination. *Id.* at 804.

Here, Devine cannot establish a prima facie case because there is no evidence that similarly situated individuals outside Devine's protected class were treated more favorably. Just like Devine, the male temporary counselor at the Sacramento Vet Center, Lee Field, was not offered a permanent position because he had not met productivity standards for counselors. Boesch Decl. Exh. 2 (Reeves Depo. 25:5-27:5, 28:22-29:9); Reeves Decl. ¶ 8. The other female temporary counselor, Krista Van Zeyl, was offered a permanent position because she had met those standards. Boesch Decl. Exh. 2 (Reeves Depo. 47:8-12, 48:2-51:7), Exh. 3 (Molina Depo. 43:22-44:22); Reeves Decl. ¶ 8 & Exh. 3 (Reeves Depo. Exh. A).

Moreover, Devine's failure to meet productivity standards – a failure to spend an adequate amount of her work time directly counseling veterans – is a legitimate, non-discriminatory reason for deciding not to offer her a permanent job as a counselor. And there is no evidence of pretext.

Devine's disparate treatment sex discrimination claim fails.

**B.** **Devine's sexual harassment claim is time-barred and also fails because her work environment was not hostile, and the VA took reasonable care to prevent harassment.**

 In claims two and six of the First Amended Complaint, Devine asserts a Title VII sexual harassment claim alleging that Molina (her supervisor) harassed her by making sexual advances and that, because she refused those advances, he did not offer her a permanent job as a readjustment counselor. Dkt. 12 at 7-8, 15-17.

**1.** **Devine's sexual harassment claim is time-barred because the only gender-based harassing conduct she alleges was more than a year before her EEO complaint.**

Devine was required to exhaust administrative remedies by filing a timely administrative charge before filing Title VII claims in federal court. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003). A person alleging retaliation or discrimination by a federal agency must contact an EEO counselor within 45 days of an alleged adverse action. 29 C.F.R. §§ 1614.103(a), 1614.105(a)(1). This

45-day time limit is treated as a "statute of limitations for filing suit." *Johnson v. U.S. Treas. Dep't*, 27 F.3d 415, 416 (9th Cir. 1994); *see also Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002).

Devine first contacted an EEO counselor on June 22, 2016. Boesch Decl. Exh. 1 (Devine Depo. 26:13-22, 28:8-23), Exh. 7 (Devine Depo. Exh. D). She therefore could only bring claims based on alleged adverse actions within 45 days of that date, so actions *on or after May 8, 2016*. The only adverse action in Devine's EEO complaint that falls within that window is Molina informing Devine that she would not be offered a new contract. *Id.*

Discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire" require a claimant to file a timely administrative charge. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Each discrete discriminatory act starts a new clock for filing charges challenging that act. *Id.* at 113. And discrete discriminatory acts are not actionable if time barred, even when they are related to acts challenged by a timely charge. *Id.*

Devine filed a timely charge challenging the discrete adverse action of failing to hire her for a permanent counseling position in mid-May 2016. But she cannot rely on that charge to render any other challenges to discrete acts timely. *Morgan*, 536 U.S. at 113. That is because each allegedly discriminatory discrete act requires a separate, timely administrative charge. *Id.*

But "[h]ostile environment claims are different in kind from discrete acts" because the alleged unlawful employment practice occurs as a series of individual acts of harassment. *Morgan*, 536 U.S. at 114. Hostile environment claims are based on the cumulative effects of such individual acts. *Id.* Such claims involve repeated conduct, and they require a plaintiff to show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 115–16. Discrete discriminatory acts cannot support a hostile work environment claim. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) ("If the flames of an allegedly hostile environment are to rise to the level of an actionable claim, they must do so based on the fuel of timely non-discrete acts."); *see also Brown v. Dignity Health*, No. CV-18-03418-PHX-JJT, 2020 WL 3403088, at *6 (D. Ariz. June 19, 2020), *appeal dismissed*, No. 20-16398, 2020 WL 8184715 (9th Cir. Nov. 13, 2020) ("The controlling case law makes clear that a discrete act is not the kind of conduct that supports hostile work environment

claims.") (citing *Morgan*, 536 U.S. at 115); *Rekow v. Sebelius*, No. CIV 10–8156–PCT–PGR, 2011 WL 1791272, at *3 (D. Ariz. May 11, 2011); *Moore v. King Cty. Fire Prot. Dist. No. 26*, No. C05-442JLR, 2005 WL 2898065, at *3 (W.D. Wash. Oct. 31, 2005)).

To assert a timely administrative charge for a hostile work environment claim, Devine had to contact an EEO counselor to allege a series of acts creating an unlawfully discriminatory hostile work environment with at least one of those acts having occurred within the previous 45 days. *Id.* at 122; 29 C.F.R. §§ 1614.103(a), 1614.105(a)(1); *Johnson*, 27 F.3d at 416; *see also Lyons*, 307 F.3d at 1105. She did not do so. Devine contacted an EEO counselor on June 22, 2016. Boesch Decl. Exh. 1 (Devine Depo. 26:13-22, 28:8-23), Exh. 7 (Devine Depo. Exh. D). This means that, to make a timely hostile environment sexual harassment administrative charge, her complaint had to allege an individual act of harassment (1) that was part of a series of such acts and (2) that occurred on or after May 8, 2016. But the last allegedly harassing act taken by Molina per Devine's EEO complaint occurred on March 10, 2016 – more than 100 days before Devine's first contact with an EEO counselor (well before the 45-day mark of May 8, 2016). Boesch Decl. Exh. 7 (Devine Depo. Exh. D). And that allegedly harassing act was not part of a series, as it was well over a year after the June to November 2014 allegedly harassing acts. Devine's EEO complaint regarding sexual harassment was therefore untimely, and her sexual harassment claims are time-barred.

Furthermore, to avoid summary judgment, Devine must show that "any harassment took place because of sex." *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005) (internal quotes omitted); s*ee also Porter*, 419 F.3d at 893 (declining to consider insults that occurred within the statute of limitations as part of a hostile work environment claim because "there is nothing to suggest that Ford's statements or the insults hurled by unnamed officers were sexually charged, or that these statements would not have been directed toward [plaintiff] if she was a man"). But the March 10, 2016 incident – in addition to being outside the statute of limitations – was unrelated to Devine's gender. Devine's description of the event makes clear that it involved frustration about an issue with Devine's pay that led to Molina complaining to another employee that Devine had behaved without tact and like a bully. Boesch Decl. Exh. 7 (Devine Depo. Exh. D), Exh. 1 (Devine Depo. 62:16-66:16, 78:3-79:8). The only harassing actions *related to her gender* that Devine alleges occurred in June through November of

*2014*, more than a year and a half before she contacted an EEO counselor.  All the conduct that Devine has identified in this lawsuit that could possibly constitute sexual harassment – two texts from Molina, two comments regarding her appearance, two glimpses of sexually explicit images on his computer screen, him showing her a picture of a tattoo on his back, and him inviting her to join him for lunch or coffee – happened in 2014.  Boesch Decl. Exh. 7 (Devine Depo. Exh. D), Exh. 1 (Devine Depo. 32:8-85:5).  Molina was out of the country on military deployment for the next year, returning to the VA in February 2016.  Boesch Decl. Exh. 3 (Molina Depo. 31:12-20); Molina Decl. ¶ 5.  Devine alleges no conduct like the 2014 incidents – or in any way related to Devine's gender – after Molina's return much less within the statute of limitations.  *Id.*  Accordingly, Devine's sexual harassment claims are time-barred.

> **2.  Devine's hostile environment claim fails because the alleged harassment was not severe or pervasive enough to create a discriminatorily hostile work environment.**

The only Title VII sexual harassment claim that Devine can pursue here is a hostile work environment claim.  In addition to being time barred, that claim fails because the harassing acts Devine alleges were not severe or pervasive enough to create a discriminatorily hostile work environment.

Title VII claims of sexual harassment by a supervisor fall into two categories.  First, "tangible employment action" or "quid pro quo" claims are those in which the supervisor takes a tangible employment action against the claimant.  In such cases, the employer is held vicariously liable for the supervisor's actions if the claimant proves sexual harassment.  Second, "hostile environment" claims are those in which the claimant must prove that a supervisor engaged in a course of severe or pervasive harassing conduct not resulting in a tangible employment action.  In hostile environment cases, the employer may assert a "reasonable care" affirmative defense.  That defense allows the employer to avoid vicarious liability for the supervisor's actions by showing that it took reasonable care to prevent harassment and that the claimant unreasonably failed to take advantage of preventative opportunities.  *Holly D. v. California Institute of Technology*, 339 F.3d 1158, 1166-67 & n.13 (9th Cir. 2003).[1]

---

[1] S*ee also Maner v. Dignity Health*, 9 F.4th 1114, 1120 (9th Cir. 2021) (identifying "three types of [Title VII] sex discrimination claims: disparate treatment (adverse employment actions motivated by sex); quid pro quo sexual harassment (conditioning employment benefits on submission to sexual advances); and hostile work environment harassment (unwelcome sexual advances so severe as to alter the terms and conditions of employment)").

Devine cannot pursue a quid pro quo/tangible employment action sexual harassment claim because Molina took no tangible employment action against her. Quid pro quo sexual harassment by a supervisor occurs when the supervisor subjects an employee to a "tangible employment action" and the supervisor "explicitly or implicitly conditions a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." *Maner v. Dignity Health*, 9 F.4th 1114, 1125 (9th Cir. 2021). Here, the tangible employment action Devine alleges is the failure to offer her a permanent counseling job. *See* Dkt. 12 at 16 (Devine's First Amended Complaint alleging that Molina's decision to terminate Devine's employment was a tangible employment action resulting from Devine's refusal to submit to Molina's sexual demands). But the undisputed evidence shows that Molina requested that the VA offer Devine a permanent counseling job. Boesch Decl. Exh. 2 (Reeves Depo. 24:20-25:4, 34:22-35:13), Exh. 3 (Molina Depo. 28:2-30:23); Reeves Decl. ¶ 8; Molina Decl. ¶ 9. It was Reeves who decided, despite Molina's request, not to offer Devine a permanent position because she had not met counseling productivity standards. Boesch Decl. Exh. 2 (Reeves Depo. 25:5-27:5, 28:22-29:9); Reeves Decl. ¶ 8. Accordingly, because Molina (the supervisor who allegedly harassed Devine) took no employment action against her, Devine cannot pursue a quid pro quo/tangible employment action sexual harassment claim.

> **a)** **The alleged harassment consisted of innocuous incidents during six months in 2014 that did not alter the conditions of Devine's employment.**

To establish that she was subjected to a hostile work environment violating Title VII, Devine must prove that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 647 (9th Cir. 2021); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.") (internal quotation marks and citations omitted). Devine must show that the work environment she complains of was both subjectively and objectively hostile. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112-13 (9th Cir. 2004). The court evaluates objective hostility from the

perspective of a reasonable woman. *Id.* at 1115. A court considers the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 1113. "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Dominguez-Curry*, 424 F.3d at 1034 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Accordingly, "[n]ot every insult or harassing comment will constitute a hostile work environment." *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000). The standard for judging hostility is meant to "ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

To analyze a hostile work environment claim, a court must first set aside any discrete acts of alleged discrimination, then determine whether the non-discrete acts alleged are sufficiently severe and pervasive to establish a hostile work environment. *See Porter*, 419 F.3d at 893–94. Examples of non-discrete acts that can constitute harassment include sexual propositions, insults, and obscenities. *Porter*, 419 F.3d. at 892–93.

Here, none of the alleged incidents of harassment involved gender-related insults or obscenities. And the only "proposition" was a text inviting Devine to join Molina on a trip to Reno.[2] Devine declined, and she did not speak about it to Molina again or receive any other invitations from him. Devine asserts that Molina also sent her a text stating that he was trying to terminate a permanent employee (Sandy Moreno) to put Devine in her place. But such a text is not a proposition, and Devine identifies no other statements or behavior by Molina suggesting otherwise. Boesch Decl. Exh. 7 (Devine Depo. Exh. D), Exh. 1 (Devine Depo. 32:8-38:17).

Devine testified at deposition that, three times during a six-month period in 2014, she saw inappropriate material on Molina's computer screen while she was in his office.[3] First, she saw a screen

---

[2] Molina denies that he sent such a text, and several of Devine's other allegations, but the Secretary analyzes the facts as Devine asserts them for purposes of this summary judgment motion only.

[3] This differs from her report to Selby during the 2016 fact investigation, but for purposes of

of women's naked bottoms that Molina quickly minimized to remove it from her view.  Second, she glimpsed a video playing off to the side of his desk that had two naked women – she looked away immediately and did not know whether he knew she had seen it.  And third, she saw a dating site called "Plenty of Fish" that had no images.  Boesch Decl. Exh. 1 (Devine Depo. 44:20-45:25, 47:18-53:22).  While the images Devine described seeing on two occasions were inappropriate, Devine's description indicates that Molina did not deliberately show her the images and that her exposure to them was very brief.

Devine testified that she went out to lunch or coffee with Molina on four occasions in 2014.  Per Devine, nothing of note occurred during any of these outings.  She decided not to go anymore when she concluded that Molina was not going on such outings with other staff, though she acknowledges he may have done so without her observing it.  Boesch Decl. Exh. 1 (Devine Depo. 39:18-43:9).

In her deposition, Devine pointed to two comments by Molina stating that he liked her citrusy perfume and that she looked good in her new jeans.  Neither of these comments was offensive or obscene, and neither specifically referenced Devine's gender.  Boesch Decl. Exh.1 (Devine Depo. 59:16-61:6).  She testified that Molina also asked her about a visible tattoo on her wrist, and he showed her a picture of a tattoo on his back.  Again, this exchange appears innocuous and unrelated to Devine's gender.  Boesch Decl. Exh. 1 (Devine Depo. 46:1-13, 54:18-59:15, 151:2-153:12).  These isolated comments and question happened over the six-month period in 2014 during which all the harassment relating to Devine's gender allegedly took place.

The only negative comments Devine asserts Molina *ever* made about her were to Margie Tooman in March 2016.  Those comments involved Molina complaining to Tooman about his interactions with Devine regarding a pay issue.  Devine described that pay issue as causing tension between her, Molina, and Tooman.  It involved Devine becoming frustrated that a mistake Devine made in entering her leave into the timekeeping system was not corrected more quickly.  Boesch Decl. Exh. 1 (Devine Depo. 62:11-66:16, 78:3-79:17).  Devine asserts that she overheard Molina saying to Tooman that Devine had no tact, seemed to think they did not care about her pay, was too stupid to input her

this summary judgment motion only the Secretary accepts Devine's version of the facts.

leave correctly, and was bullying. Nothing about this incident was related to Devine's gender. And when Devine asked Molina to discuss the issue with her and a third-party mediator, he did so. That mediation concerned only the March 10, 2016 statements that Devine overheard Molina make to Tooman and the underlying pay issue leading up to those statements. Boesch Decl. Exh. 1 (Devine Depo. 79:22-82:15, 83:13-85:5). Per Devine, the issue was resolved in a manner "favorable to" her when it was agreed that Molina was not to speak about Devine at all. Boesch Decl. Exh. 7 (Devine Depo. Exh. D), Exh. 1 (Devine Depo. 84:16-23).

These incidents, which occurred almost entirely during a six-month period in 2014, were insufficient to create a workplace "permeated with discriminatory intimidation, ridicule, and insult." *See Harris*, 510 U.S. at 21. None were severe. And they were not pervasive – as only one of them occurred in the *year* prior to Devine filing her EEO complaint. From June to November 2014, Devine turned down a text invitation to Reno, got a text regarding a potential permanent job, saw two fleeting glimpses of inappropriate images, answered a question about her wrist tattoo, was shown a picture of Molina's back tattoo, went to lunch or coffee with Molina without incident on four occasions, and received two blandly worded compliments. Then, more than a year later, she overheard Molina complaining about her approach to fixing an hours-reporting mistake made by her. And when she objected to his comments, he attended a mediation with her and a third party and resolved the issue.

As the Ninth Circuit has observed, the "required severity for harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Fried*, 18 F.4th at 649. Here, the relative infrequency of the conduct complained of means that it would have to be quite severe to create a hostile work environment. It is not.

By comparison, the Ninth Circuit has found much harsher comments and behavior insufficient. In *Kortan v. California Youth Authority*, a female employee brought a hostile work environment claim based on her supervisor's misogynistic comments. 217 F.3d 1104, 1106-08 (9th Cir. 2000). The supervisor called the plaintiff "Medea," referred to another employee as a "madonna," a "regina," and a "castrating bitch," and generally to women as "bitches" and "histrionics." *Id.* at 1107. The Ninth Circuit concluded that these demeaning comments were not severe enough to create a hostile work environment, in part because they occurred on only a couple occasions. *Id.* at 1110–12. In *Manatt v.*

*Bank of America*, the court considered a Chinese-American employee's hostile work environment claim based on offensive racial comments and acts. 339 F.3d 792, 794-95 (9th Cir. 2003). In one incident, Manatt heard her coworkers laughing and saying "China Man" and saw them pulling "their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians." *Id.* at 795. In another, a coworker ridiculed Manatt for mispronouncing the word "Lima," referring to her as "China woman." *Id.* Though the court found these events offensive and insensitive, it held that they did not create an actionable hostile work environment. *Id.* at 798–99; *see also, e.g., Vasquez v. County of Los Angeles*, 349 F.3d 634, 643–44 (9th Cir. 2003) (holding a coworker's remarks, six months apart, that an employee had "a typical Hispanic macho attitude" and "should consider transferring to the field because 'Hispanics do good in the field'" were not severe enough to create a hostile work environment); *compare Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872-73 (9th Cir. 2001) (finding a hostile work environment where a male employee was called "faggot" and "fucking female whore" at least once a week and often several times per day); *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999) (finding a hostile work environment where a supervisor repeatedly called the plaintiff "office sex goddess," "sexy," and "the good little girl" and publicly humiliated her by drawing breasts on an easel during a presentation she was making and telling the assembled group "this is your training bra session" and where the plaintiff received rude notes and was touched on the buttocks and told she was "putting on weight down there"), *abrogated on other grounds in Morgan*, 536 U.S. 101; *Draper v. Coeur Rochester*, 147 F.3d 1104, 1109 (9th Cir. 1998) (finding hostile work environment where employee's supervisor repeatedly made sexual comments to her, told her about his sexual fantasies and wish to have sex with her, remarked on her physical characteristics, and inquired over a loudspeaker about whether she needed assistance changing her clothes).

The conduct Devine alleges was not sufficiently severe or pervasive to create a hostile work environment. For that reason, her claim fails.

//

//

### 3. Devine's hostile environment claim also fails because the VA took reasonable care to prevent harassment and provided opportunities to report it.

Even if Devine could produce sufficient evidence to create a dispute of fact regarding the creation of a discriminatorily hostile work environment, her claim nonetheless would fail because the VA took reasonable care to prevent sexual harassment.

The Supreme Court recognized a "reasonable care" affirmative defense to vicarious liability under Title VII that employers can raise in cases involving hostile work environment harassment by a supervisor that did not result in a tangible employment action. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). If an employer "provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense" and the employee "unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so." *Faragher*, 524 U.S. at 806-07.

Here, the VA had an effective policy to prevent workplace harassment, including sexual harassment. Boesch Decl. Exh. 2 (Reeves Depo. 47:8-12, 55:22-56:9); Reeves Decl. ¶ 3 & Exh. 1 (Reeves Depo. Exh. C). That policy required all employees to receive training on the Program for the Prevention of Workplace Harassment within 90 days of employment. Reeves Decl. Exh. 1 (Reeves Depo. Exh. C) at 1. Devine was aware of the policy. Boesch Decl. Exh. 8 (Devine Depo. Exh. E) at 4-5 (Devine referencing this policy and its training requirements in her affidavit supporting her EEO complaint). The policy emphasized that an employee wishing to file a complaint of discrimination must contact an EEO counselor within 45 days of the harassing incidents, and it provided the phone number to do so. Reeves Decl. Exh. 1 (Reeves Depo. Exh. C) at 3. And it required Reeves, as Regional Manager, to request an investigation into all allegations of workplace harassment as soon as he became aware of possible workplace harassment. Reeves Decl. Exh. 1 (Reeves Depo. Exh. C) at 3.

Throughout the pertinent time, Regional Manager Reeves was familiar with the VA's policy of preventing sexual harassment in the workplace. Boesch Decl. Exh. 2 (Reeves Depo. 47:8-12, 55:22-56:9); Reeves Decl. ¶ 3 & Exh. 1 (Reeves Depo. Exh. C). Reeves had received allegations of sexual harassment against Vet Center team leaders in the past. Boesch Decl. Exh. 2 (Reeves Depo. 56:10-13); Reeves Decl. ¶ 4. When he did, he would protect the victim by removing the Vet Center team leader

from the center at issue, having the team leader work form another location until the allegations had been investigated. Then, once the allegations were substantiated or not substantiated, Reeves would take disciplinary action if appropriate. Boesch Decl. Exh. 2 (Reeves Depo. 56:10-57:8); Reeves Decl. ¶ 4. Reeves never received any allegation that Molina had sexually harassed anyone. Boesch Decl. Exh. 2 (Reeves Depo. 57:9-11), Exh. 1 (Devine Depo. 34:16-36:17); Reeves Decl. ¶ 5. If Reeves had received such an allegation, he would have removed Molina from the Sacramento Vet Center and instituted an investigation. Boesch Decl. Exh. 2 (Reeves Depo. 57:9-14); Reeves Decl. ¶ 5.

Devine understood the VA's policy against sexual harassment, and her aunt told her she should report Molina's 2014 text inviting her to Reno. Nonetheless, Devine did not report any of the conduct she complains about in this lawsuit – nearly all of which took place during six months in 2014 – until June 22, 2016. Boesch Decl. Exh. 1 (Devine Depo. 26:13-22, 28:8-23), Exh. 7 (Devine Depo. Exh. D).

As the Supreme Court has observed, "[i]f the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided." *Faragher*, 524 U.S. at 806-07. Here, any harm that Devine experienced could have been avoided by reporting the conduct that she found troubling. This is especially significant given the innocuous nature of most of the conduct she complains about, as nothing put the VA or Molina on notice that Devine found, for example, invitations to uneventful coffee/lunch outings or everyday interaction in the office with Molina to be hostile. The VA had no opportunity to address Devine's concerns because she did not raise them in a timely manner.

Because the VA took reasonable care to prevent sexual harassment and provided an effective mechanism for reporting and correcting any such harassment, Devine's hostile work environment claim fails.

## C. Devine's retaliation claim fails because Reeves was unaware of any protected activity and did not offer her a permanent job because she fell below productivity standards.

In claims four and six of her First Amended Complaint, Devine asserts a Title VII retaliation claim asserting that Molina retaliated against her by terminating her employment for refusing to submit to his sexual demands and providing information during the investigation into Molina allegedly viewing

pornography in the workplace. Dkt. 12 at 11-13, 15-17; s*ee, e.g.,* Dkt. 12 at 16 (alleging that "MOLINA's decision to terminate her employment was retaliation and reprisal for her participation in protected EEOC activity and refusal to engage in MOLINA's sexual advances").

Though the Supreme Court has yet to rule on the question, courts assume that Title VII prohibits federal employers from retaliating against an employee for engaging in protected activity — opposing, complaining of, or seeking remedies for workplace discrimination that violates Title VII. *See* 42 U.S.C. § 2000e-3(a); *White v. Gen. Servs. Admin.*, 652 F.2d 913, 916-17 (9th Cir. 1981); *see also Green v. Brennan*, 578 U.S. 547, 551 n.1 (2016); *Gomez-Perez v. Potter*, 553 U.S. 474, 488 n.4 (2008).

Courts apply the burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when considering a Title VII retaliation claim. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). Under this framework, first Devine must make a prima facie case of retaliation. *McDonnell Douglas*, 411 U.S. at 802. If she does so, then the VA must articulate a legitimate, nondiscriminatory reason for the challenged action. *Id.* Once the VA offers a legitimate non-discriminatory reason, the burden shifts back to Devine, who must prove that the VA's proffered reason was a pretext for unlawful discrimination or retaliation. *Id.* at 804.

To make a prima facie retaliation case, Devine must prove: (1) she engaged in a protected activity under Title VII; (2) the VA subjected her to an adverse employment action; and (3) a causal link exists between her protected activity and the VA's action. *Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013); *Villiarimo v. Aloha Is. Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).

### 1. Devine's retaliation claim fails because she cannot show a causal link between any protected activity and the decision not to offer her a permanent job.

Devine cannot prove retaliation because she cannot prove causation. To show a causal link between protected activity and an allegedly retaliatory action, Devine must show the decision maker (Reeves) knew that she had engaged in protected activity. *Maner*, 9 F.4th at 1127.

"Logically, only events taking place before the decision to take an adverse employment action and known to the employer at the time could have caused the employer's decision." *Maner*, 9 F.4th at 1127. Devine contacted an EEO counselor on June 22, 2016 – weeks after her temporary employment

contract ended.  The May 2016 decision not to offer her a permanent job could not have been retaliation for an EEO complaint she initiated in June 2016.

Devine may argue that her anonymous, online complaint to the OIG regarding seeing pornography on Molina's computer constituted protected activity.  *See* Boesch Decl. Exh. 1 (Devine Depo. 98:16-100:3).  But that complaint did not mention discrimination or sexual harassment, it simply alleged that Molina was viewing inappropriate material in the workplace.  And, even if the OIG complaint could be considered protected activity, Devine did not speak to anyone other than her psychiatrist about having submitted it.  She did not even speak to anyone at the OIG, it was an anonymous complaint that she submitted online.  *Id.*

Molina did not know she had filed that complaint, and neither did Reeves.  Boesch Decl. Exh. 1 (Devine Depo. 98:16-100:3), Exh. 5 (Devine Depo Exh. F), Exh. 3 (Molina Depo. 38:15-39:4), Exh. 2 (Reeves Depo. 21:4-8, 22:16-23:1); Reeves Decl. ¶ 6.  And neither of them knew what she had said to Selby during the investigation resulting from the complaint.  Boesch Decl. Exh. 2 (Reeves Depo. 21:25-22:7, 53:15-55:11); Reeves Decl. ¶ 7 & Exh. 2 (Reeves Depo. Exh. B); Molina Decl. ¶ 8.  Reeves could not retaliate against Devine for something that he did not know about.  *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.").  Devine cannot show causation.

2. **Devine's failure to meet productivity standards for counselors is a legitimate, non-retaliatory reason for Reeves' decision not to offer her a permanent job.**

Finally, Devine can point to no evidence suggesting that Reeves' legitimate reason for not offering her a permanent job was a pretext for unlawful retaliation.  Devine's failure to spend an adequate amount of her work time directly counseling veterans was a valid reason not to offer her – and other temporary counselors not meeting productivity standards – a permanent position.

## V.  CONCLUSION

For the foregoing reasons, Devine's claims fail as a matter of law.  The Court should therefore grant summary judgment for the Secretary on all Devine's claims and enter judgment for the Secretary.

Respectfully submitted,

Dated:  November 10, 2022                    PHILLIP A. TALBERT
                                            United States Attorney

                                      By:   */s/ Victoria L. Boesch*
                                            VICTORIA L. BOESCH
                                            Assistant United States Attorney
                                            Attorneys for Defendant