1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KELLY DEVINE,                        No. 2:17-cv-02331-DJC-AC

12                Plaintiff,

13         v.                             ORDER GRANTING SUMMARY

14   DENIS McDONOGH, Secretary of         JUDGMENT
     Veterans Affairs,
15

16                Defendant.

17

18         In this action brought under Title VII, Plaintiff Kelly Devine alleges that she was

19   discriminated against on the basis of her gender and sexually harassed by her former

20   supervisor, Michael Molina, during the course of her employment with the

21   Department of Veterans Affairs ("the VA").  She also alleges that she was retaliated

22   against and wrongfully terminated after she filed a complaint about her supervisor's

23   behavior.  Defendant, the Secretary of Veterans Affairs,[1] brought the instant Motion for

24   Summary Judgment which is now fully briefed.

25   ////

26   _____

27   [1] The former Secretary of Veterans Affairs against whom this case was originally brought, David J.
     Shulkin, has been substituted by Denis McDonogh, the current Secretary of Veterans Affairs pursuant
28   to Fed. R. Civ. P. 25(d).

                                          1

1   While a reasonable jury could find that Plaintiff experienced sexual harassment
2   in 2014, the Court concludes that the claims related to sexual harassment are time
3   barred due to Plaintiff not timely contacting an EEO Officer.  *See* 29 C.F.R.
4   §§ 1614.103(a), 1614.105(a)(1).  Although Plaintiff alleges a continuing violation, no
5   reasonable jury could conclude that the interactions Plaintiff had with Molina in 2016
6   were sexual in nature.  As to her gender discrimination claim, the fact that Plaintiff
7   points to no similarly situated individuals outside her protected class who were
8   treated more favorably is fatal.  That is particularly true when another similarly situated
9   woman was retained.  Finally, as to her retaliation claim, while Plaintiff has made out a
10  prima facie case that she was fired in retaliation for complaining to an EEO Officer
11  about being exposed to sexually explicit material on her supervisor's computer,
12  Defendant has offered a legitimate reason for Plaintiff's termination – her failure to
13  meet objective productivity requirements – and she has failed to provide evidence
14  that this reason is pretextual.  Accordingly, the Court GRANTS Defendant's Motion for
15  Summary Judgement.

16  **I.    FACTUAL BACKGROUND**

17  The following facts are undisputed.  Plaintiff worked at the Sacramento
18  Veterans Center as a Readjustment Counselor for the Department of Veterans Affairs
19  starting in June 2014.  She was hired as a temporary employee for a one-year term,
20  which was then extended for a second one-year term.  Plaintiff provided individual
21  and group therapy to veterans and their families.  From June 2014 through November
22  2014, Plaintiff's supervisor was Michael Molina, the director of the Sacramento
23  Veteran's Center.  While Molina was deployed for a military assignment in 2015,
24  Plaintiff was supervised by another individual, but Molina resumed supervision of
25  Plaintiff in February 2016 and remained her supervisor until Plaintiff was terminated on
26  June 1, 2016 after her contract was not renewed.
27  Plaintiff's claims revolve around several alleged acts that Plaintiff argues
28  constituted sexual harassment.  Defendant does not deny that these events occurred

for purposes of the Motion for Summary Judgment, but rather contests their significance.  Each of these incidents occurred between June and November 2014:

- Molina sent Plaintiff a text message inviting her to Reno, NV where he was spending the weekend, noting that there was a hot tub in the room.  (Devine Dep. 34:19–21.)

- Molina invited Plaintiff to join him for lunch or coffee, but she was the only staff member Molina asked to do so.  (First Am. Compl. ("FAC") (ECF No. 12) ¶ 12; Devine Dep. 38:18–41:12.)

- Molina would invite Plaintiff into his office to discuss work-related items where a laptop would display naked women, a dating site used for "hooking up," and other inappropriate images.  (Devine Dep. 44:20–45:22.)

- Molina asked Plaintiff about a tattoo on her wrist, and then noted that he had a tattoo, which Plaintiff interpreted as a signal that she should ask to see it, making her uncomfortable.  (*Id*. 46:1–7.)  At one point, Molina showed Plaintiff a picture of a tattoo that covered the entirety of his back.  (*Id*. 46:9–13; 54:21–25; 56:17–24.)

- Molina commented that Plaintiff's perfume smelled good and that a pair of jeans Plaintiff was wearing "looked nice."  (*Id*. 59:21–25.)

- Molina asked that Plaintiff add him as a friend on Facebook; once she did, he invited Plaintiff to "like" his Facebook photography page, which featured a work study employee at the Veteran's Center wearing "lingerie-type, costume like, sexy-type attire."  (*Id*. 68:20–70:16.)

It is further undisputed that while Molina was deployed, Plaintiff did not see him.  (*Id*. 61:18-24.)  Upon his return, however, Molina resumed supervision of Plaintiff sometime in February 2016.  At some point between February and March 2016, Plaintiff raised a concern regarding a pay issue.  (*Id*. 63:4–15.)  On March 10, 2016, Plaintiff overheard Molina making statements, which included foul language, to the effect that Plaintiff had no tact, that she was stupid, and that she was replaceable.

1  (Devine Dep., Ex. D.)  In response, the EEO manager suggested that Plaintiff and

2  Molina engage in a mediation, which resulted in an agreement that Molina was not to

3  speak about Plaintiff in the future.  (Devine Dep., 81:18–82:14; 84:17-21.)

4       In April 2016, Plaintiff filed an anonymous, online complaint with the Veterans

5  Affairs Office of the Inspector General regarding Molina viewing pornography at work.

6  (Devine Dep., 99:11–15.)  Molina's supervisor, Regional Manager Steven Reeves,

7  assigned an Associate Regional Manager to investigate the allegations in the

8  complaint.  (Boesch Decl. (ECF No. 30-3); Reeves Dep. 21:25–22-7.)  As part of the

9  investigation, ten employees were interviewed, the names of which were included in a

10  report Manager Reeves received on May 10, 2016.  (Reeves Depo, Ex. B.)  The report

11  concluded that the allegation that Molina viewed inappropriate material during work

12  hours could not be substantiated (*id.* at 2), and Molina was not subject to discipline as

13  a result.  (Devine Decl. (ECF No. 31-1) ¶ 28).

14       Around that time, Plaintiff's temporary appointment was expiring, and was not

15  subject to renewal such that she would be terminated unless her position was made

16  permanent.  (Devine Dep. 162:17–19; *Id*., Ex. G; Boesch Decl., Ex. 4 (Inman Decl.) at 3.)

17  In May 2016, Molina asked Regional Manager Reeves to make Plaintiff a permanent

18  employee, along with two other temporary readjustment counselors whose temporary

19  appointments were expiring.  (Def.'s Separate Statement of Undisputed Facts (ECF 30-

20  2) No. 8.)  While Plaintiff disputes this was the actual reason, Reeves testified that he

21  did not offer permanent positions to Plaintiff and another male counselor because

22  they failed to meet productivity standards for counselors.  (See Def.'s Reply to Plf's

23  Separate Statement of Disputed Material Facts and Additional Undisputed Material

24  Facts (ECF 33-1) No. 9.)  As a result, Devine's temporary appointment ended on July 1,

25  2016.

26  **II.     PROCEDURAL BACKGROUND**

27       Relevant here, Plaintiff filed her First Amended Complaint on November 5,

28  2019 against both the VA and Molina.  The Court dismissed the Third, Fifth, and

1    Seventh Causes of Action, and the Fourth Cause of Action as to Defendant Molina on

2    February 22, 2021, (ECF No. 24), and the case proceeded against the VA on the First

3    Cause of Action for gender discrimination, the Second Cause of Action for sexual

4    harassment, the Fourth Cause of Action for retaliation, and the Sixth Cause of Action

5    for wrongful termination, each alleging violations of Title VII.  (*See generally*, FAC.)  On

6    November 10, 2022, Defendants filed for summary judgment, (ECF No. 30), which is

7    fully briefed.  (See Pl.'s Opp'n (ECF No. 31); Def.'s Reply (ECF No. 33)).  The matter

8    was submitted without oral argument (ECF No. 32), and the case was later transferred

9    to the undersigned for decision (ECF No. 34).

10   **III.    LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT**

11          The Federal Rules of Civil Procedure provide that summary judgment is

12   appropriate when "there is no genuine dispute as to any material fact and the movant

13   is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v.*

14   *Catrett*, 477 U.S. 317, 322 (1986).  One of the key purposes of Rule 56 is to dispose of

15   factually unsupported claims or defenses.  *Celotex*, 477 U.S. at 325.  Therefore, the

16   "threshold inquiry" is whether "there are any genuine factual issues that properly can

17   be resolved only by a finder of fact because they may reasonably be resolved in favor

18   of either party[,]" or, conversely, "whether it is so one-sided that one party must prevail

19   as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).  But

20   "the mere existence of some alleged factual dispute between the parties will not

21   defeat an otherwise properly supported motion for summary judgment[.]"  *Id.* at 247–

22   48.  "Only disputes over facts that might affect the outcome of the suit under the

23   governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

24          On summary judgment, the moving party always bears the initial responsibility

25   of informing the court of the basis for the motion and identifying the portions of the

26   record "which it believes demonstrate the absence of a genuine issue of material fact."

27   *Celotex*, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden

28   then shifts to the opposing party, which "must establish that there is a genuine issue of

material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574. 585 (1986).  To meet its burden, either party must "(A) cit[e] to particular parts of materials in the record, . . . or (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

For the non-moving party to succeed and avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  The non-moving party must put forth more than "a scintilla of evidence in support of the [party's] position . . . ."  *Liberty Lobby*, 477 U.S. at 252.  Rather, the non-moving party must produce enough evidence such that "the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, for the moving party to succeed, the court must conclude that no rational trier of fact could find for the non-moving party.  *Matsushita*, 475 U.S. at 587.  However, so as not to "denigrate the role of the jury[,] . . . [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and so the court draws all reasonable inferences and views all evidence in the light most favorable to the non-moving party.  *Liberty Lobby*, 477 U.S. at 255; *see Matsushita*, 475 U.S. at 587–88.

## IV.    ANALYSIS

### A.    Plaintiff's Sexual Discrimination Claims Fail

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  There are three types of sex

1   discrimination claims that arise under Title VII: "disparate treatment (adverse

2   employment actions motivated by sex); quid pro quo sexual harassment (conditioning

3   employment benefits on submission to sexual advances); and hostile work

4   environment harassment (unwelcome sexual advances so severe as to alter the terms

5   and conditions of employment)." *Maner v. Dignity Health*, 9 F.4th 1114, 1120 (9th Cir.

6   2021) (citations omitted).  Plaintiff appears to allege a disparate treatment claim and a

7   hostile work environment claim.  (Opp'n at 9.)

8                    **i.   Disparate Treatment Claim**

9           To establish a disparate treatment claim, Plaintiff must first show a prima facie

10   case of discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973).

11   To make this showing, she must show that (1) she is a member of a protected class; (2)

12   she was qualified for the position; (3) she experienced an adverse employment action;

13   and (4) similarly situated individuals outside her protected class were treated more

14   favorably.  *Berry v. Dep't of Soc. Servs.*, 477 F.3d 642, 656 (9th Cir. 2006).  If Plaintiff

15   succeeds in making out a prima facie case, the burden shifts to Defendant to offer a

16   nondiscriminatory reason for its action, and if such a reason is offered, the burden

17   shifts back to Plaintiff to show that the proffered reason is a pretext for discrimination.

18   *McDonnell Douglas*, 411 U.S. at 804.  As to the prima facie case, the parties only

19   disagree as to whether Plaintiff has shown that similarly situated individuals were

20   treated differently.

21           The Court concludes that Plaintiff has failed to show that similarly situated

22   individuals outside her protected class were treated more favorably.  Plaintiff identifies

23   two other individuals who were, like Plaintiff, temporary counselors: Lee Field (male)

24   and Krista Van Zeyl (female).  (Opp'n at 8.)  Critically, while Defendant declined to

25   offer a permanent position to Field, Defendant did offer a permanent position to Van

26   Zeyl.  Plaintiff does not point to a male candidate who was treated more favorably.

27   Plaintiff points out that her productivity percentage (82%) was much more favorable

28   than Field's (22%) but *both* were refused a permanent position, while the other

                                                    7

woman, Van Zeyl, was offered a permanent position with a 106% productivity rating. And while Plaintiff complains that she was not advised of performance expectations when Van Zeyl was, that another female candidate was treated more favorably than Plaintiff is irrelevant in establishing a prima facie case.  That the other female candidate received higher pay is similarly irrelevant to whether Plaintiff was treated differently because of her sex.  At bottom, Plaintiff cannot show that a similarly situated individual *outside of her protected class*, that is Fields, was treated more favorably.

In short, Plaintiff has failed to establish a prima facie case of disparate treatment due to her sex, and the Court GRANTS summary judgement as to the First Cause of Action related to disparate treatment.

### ii.   Plaintiff Failed to Timely Exhaust Her Administrative Remedies as to the Hostile Work Environment Claim

Prior to bringing a suit for a hostile work environment, Title VII requires that a plaintiff employed by an executive agency, including the Department of Veterans Affairs (among other federal employers), contact an EEO Counselor within 45 days of an alleged adverse action.  29 C.F.R. §§ 1614.103(a), 1614.105(a)(1).  It is undisputed that Plaintiff contacted her EEO Officer on June 22, 2016.  (Devine Dep., Ex. D.) Accordingly, any adverse action must have occurred on or after May 8, 2016.

In analyzing whether actions are timely, the Supreme Court has distinguished between "discrete discriminatory acts and hostile work environment claims."  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).  As to the former, a "discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"  *Id*. Furthermore, each discrete discriminatory act "starts a new clock for filing charges alleging that act."  *Id*. at 113.  Hostile work environment claims, however, by their nature involve "repeated conduct" and can rarely be premised on a discrete act of harassment.  *Id*. at 103.  Accordingly, so long as any act that contributes to the claim

falls within the limitations period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 117.

Plaintiff argues two theories as to why her claims related to sex discrimination are timely, both of which fail, albeit for different reasons.  First, she alleges that the VA's refusal to extend a permanent position on May 18, 2016 is a discrete act of discrimination that unquestionably happened within the limitations period.  (Opp'n at 9.)  While this claim is timely, as discussed above, she has failed to state a claim on that basis.

Second, Plaintiff alleges that Molina created a hostile work environment, and that at least one act that contributed to that environment occurred after May 8, 2016. But Plaintiff has not shown any triable issue of fact by which a reasonable jury could conclude this to be the case.  While a reasonable jury might well conclude that the actions that allegedly took place in 2014 were sufficient to create a hostile work environment, Plaintiff fails to produce any evidence that any conduct that contributed to a hostile work environment occurred after May 8, 2016.  Plaintiff cites a declaration she signed in support of her opposition to summary judgment, in which she states that the specific incidents of harassment that took place in 2014 "continued until the end of my two-year employment term."  (Devine Decl. ¶ 8.)  But this self-serving, conclusory, and generic statement—which conflicts with her prior deposition—is insufficient to create a triable issue of material fact.  *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

Moreover, the only specific incident that Devine claims occurred in 2016 does not represent a continuation of the sexually-harassing conduct.  Plaintiff states that after Molina returned from his deployment, there was an incident in which Molina said things such as "Who the fuck walks in their boss's office like that with no tact;" "If she's too fucking stupid to put her leave in correctly. . . .";  "I get the impression she thinks we don't give a fuck about her pay;" and "I don't need her, she's replaceable." (Devine Decl. ¶ 18.)  First, these comments occurred on March 10, 2016, outside of

limitations period.  (*Id*.)  Second, and more significantly, no reasonable trier of fact could conclude that these comments are a component act of the hostile work environment claim.  In her deposition, Plaintiff discussed this incident related to her pay, and did not testify that it was related to her sex or gender.  Not only is there no evidence that Plaintiff subjectively considered this sexual harassment, but there is nothing inherent about the statements that a reasonable juror could objectively conclude was sexual in nature.  *Cf. Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 687 (9th. Cir. 2017) (noting that a plaintiff "must show that the work environment was both subjectively and objectively hostile").  Since there is "nothing to suggest [Molina's] statements . . . were sexually charged,"  the alleged statements from 2016 are not enough to show that the sexually hostile environment that occurred in 2014 continued to March 2016, never mind to the limitations date of May 8, 2016.  *See Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005).  Accordingly, the claims are time-barred and the Court GRANTS summary judgment as to Plaintiff's Second Cause of Action related to sexual harassment.

### B.    Plaintiff's Retaliation and Wrongful Termination Claims Fail

Title VII prohibits discrimination against an employee because that employee has opposed an employment practice made unlawful by Title VII.  42 U.S.C.§ 2000e-2(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006).  Plaintiff alleges that she was not offered a permanent position in retaliation for failing to submit to her supervisor's sexual demands and for filing a complaint related to her supervisor's inappropriate use of his computer to view sexually explicit material.  (See FAC ¶¶ 44–69, 82–93.)  To make out a prima facie case of retaliation under Title VII, Plaintiff must put forth evidence sufficient to show (1) that she engaged in a protected activity; (2) she suffered an adverse employment action, and (3) that there was a causal connection between the protected activity and the employment decision.  *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1196–97 (9th Cir. 2003).  As with the disparate impact claim, once Plaintiff has set out a prima facie claim, the burden-

1   shifting framework of *McDonnell Douglas* is appropriate, *Villiarimo v. Aloha Island Air,*

2   *Inc.*, 281 F.3d 1054, 1064 (9th. Cir. 2002), such that burden shifts to the employer to

3   articulate some legitimate, nondiscriminatory reason for the adverse employment

4   decision. *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir.

5   1986).  If the employer is successful, "the plaintiff must then prove by a

6   preponderance of the evidence that the proffered reasons are pretexts for retaliation

7   or that a discriminatory reason more likely motivated the employer's action." *Id.*

8        **i.   Plaintiff Has Made Out a Prima Facie Case of Retaliation**

9        In making out a prima facie case, Defendant does not argue that Plaintiff's

10  complaint to the EEO officer regarding the sexually explicit material was a protected

11  activity, and that the failure to hire Plaintiff was an adverse employment action.  Rather,

12  Defendant argues that Plaintiff has failed to put forward any evidence of a causal

13  connection between the two.  (Opp'n at 19.)

14       Plaintiff has put forward sufficient evidence through which a jury could infer

15  causation.  While a causal connection may be inferred from "proximity in time

16  between the protected action and the allegedly retaliatory decision," *Yartzoff v.*

17  *Thomas*, 809 F.2d 1371, 1371 (9th Cir. 1987), "the plaintiff must make some showing

18  sufficient for a reasonable trier of fact to infer that the defendant was aware that the

19  plaintiff had engaged in protected activity," *Raad*, 323 F.3d at 1197 (citing *Cohen v.*

20  *Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)); *see also Dawson v. Entek Int'l*, 630

21  F.3d 928, 936 (9th Cir. 2011) ("The causal link can be inferred from circumstantial

22  evidence such as the employer's knowledge of the protected activities and the

23  proximity in time between the protected activity and adverse action.").

24       First, to the extent that Plaintiff's claims were based on her failure to submit to

25  her supervisor's sexual advances, given the significant amount of time between what

26  are alleged to have been his sexual advances and the adverse action – more than 15

27  months – this temporal proximity is too distant to establish a causal link.  *See Clark*

28  *Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (finding that 20 months is too

1  remote for establishing causation and citing cases in which even 3 and 4 months were

2  too remote).

3        To the extent that Plaintiff claims retaliation based on her complaint related to

4  her supervisor viewing sexually explicit material on his computer, while Plaintiff has

5  failed to provide any evidence that the decisionmaker – Reeves – knew that Plaintiff

6  was behind the complaint, there is evidence from which a jury could conclude that

7  Reeves knew that Plaintiff participated in the investigation of the complaint.  It is

8  undisputed that the initial complaint was online and anonymous.  (Def.'s SUF 3.)

9  While Reeves assigned an investigator, Christopher Shelby, to conduct a fact-finding

10 investigation (Reeves Dep. 22:3–7), Reeves testified in his deposition that he did not

11 learn that Plaintiff was the complainant until the EEO process for Plaintiff's sexual

12 harassment and discrimination claims occurred (Reeves Dep. 22:5–23:1), which was

13 well after Plaintiff's termination.

14       However, a reasonable jury could conclude that Reeves knew of Plaintiff's

15 *participation* in the investigation about the anonymous complaint, and that she was

16 terminated as a result of that participation.  Making statements in the context of an

17 EEO investigation is protected activity.  42 U.S.C. § 2000e-3(a).  Here, it is undisputed

18 that "[Reeves] became aware of her involvement in the fact finding since he was the

19 management official who initiated it."  (Cline Decl. (ECF No. 31-2), Ex. 3 at 5.)  While

20 the deposition itself does not indicate *when* Reeves learned of her involvement, in his

21 Declaration supporting the Motion for Summary Judgment, Reeves testifies that he

22 received a "May 10, 2016 report from Mr. Selby [the investigator] summarizing the fact

23 finding investigation."  (Reeves Decl. (ECF No. 30-4) ¶ 7; Reeves Dep., Ex. B.)  That

24 report identifies the Plaintiff by name.  (Reeves Dep., Ex. B.)  And while the exact date

25 Reeves made the decision to terminate Plaintiff's employment is unclear, it appears to

26 have been contemporaneous with reviewing this report.  (*See* Reeves Decl. ¶ 8.)  Thus,

27 a reasonable jury could conclude Reeves knew of Plaintiff's participation in the

28 factfinding, and could infer from the fact that she was terminated shortly thereafter

1   that her participation in this protected activity was the cause of her termination.

2   Plaintiff has therefore set out a prima facie case of retaliation.

3     **ii. Defendant Has Shown Legitimate, Nondiscriminatory Reasons for**

4       **Plaintiff's Discharge**

5      Having made out a prima facie case of retaliation, the burden shifts to the

6   defendant to "articulate some legitimate, nondiscriminatory reason for the employees'

7   rejection." *McDonnell Douglas*, 411 U.S. at 802.  Defendant has met that burden.   As

8   mentioned above there were three temporary readjustment counselors: Plaintiff, Lee

9   Field (male) and Krista Van Zeyl (female).  While Molina recommended that Reeves

10   make all three permanent employees, Reeves only extended Van Zeyl's contract.

11   According to Reeves's deposition testimony, counselors had to spend 50 percent of

12   their work time on direct service with clients. (Reeves Dep. 25:17–25.)  Moreover,

13   because therapy was often provided in a group setting, there were required to be 1.5

14   visits for every clinical hour worked to account for the two group sessions counsellors

15   were expected to conduct each week. (*Id*. 26:1–16.)  Reeves testified that he "didn't

16   convert people from temporary to permanent who were unable to meet the standards

17   of the job." (*Id*. 52:2–4.)  Of the 855 visits with clients that were required by these

18   policies, Plaintiff conducted 705, or 82% of her expected level of productivity. (*Id*.

19   49:12–22.)  Field, who also failed to meet the standards with a productivity rate of

20   22% (*id*. 50:12), was also terminated.  Only Van Zeyl, who had a productivity rate of

21   106% (*id*. 51:3), was hired to a permanent position.  Job performance, of course, is a

22   legitimate reason to make an adverse employment decision.  *Pinder v. Emp. Dev.*

23   *Dep't*, 227 F. Supp. 3d 1123, 1148 (E.D. Cal. 2017) (citing *Aragon v. Republic Silver*

24   *State Disposal Inc*., 292 F.3d 654, 661 (9th Cir. 2002)).

25     **iii. Plaintiff Fails to Meet Her Burden in Showing the Proffered Reasons**

26       **are Pretextual**

27      Having offered a legitimate, nondiscriminatory reason to justify Plaintiff's

28   termination, the burden shifts back to the Plaintiff to show that this justification is

pretextual.  *McDonnell Douglas*, 411 U.S. at 804.  Plaintiff tries to cast doubt on Defendant's proffered justification by pointing to a declaration filed in support of her opposition to summary judgment in which she states, in accordance with her statements to the EEO officer:

> When I was originally hired, I was never trained on the agency's RCSNet program which was used for self-reporting productivity/time tracking software.  There were instances, in the beginning of my employment when my productivity score was negatively impacted because my time was not accurately recorded on the RCSNet program, not due to a failure in job performance.  Despite numerous requests from supervisors for training [all of which were ignored], fellow employee Sandy Moreno taught me how to use the system so I could correct the accounting errors. I brought this concern to both Mr. Molina and Mr. Doyle Sivils. Mr. Sivils advised me that he requested Mr. Reeves change the performance review to "Exceptional" due to the accounting error.

(Devine Decl. ¶ 5; *id.*, Ex. A.)  Devine argues that the failure to train her, coupled with Moreno's failure to correct the accounting issues, "casts a shadow on the validity of the productivity rates themselves and suggests that poor productivity was merely pretext for unlawful discrimination or retaliation." (Opp'n at 14.)

This information is not enough to show that Reeves's decision to terminate Plaintiff based on her insufficient productivity was pretextual.  Notably, Plaintiff does not offer evidence that her productivity was in fact at the expected levels.  Moreover, in her statement to the EEO attached to her Declaration as Exhibit A, Plaintiff states, "I finally corrected the issue after reviewing my productivity data from the beginning of my employment" (Devine Decl., Ex. 1), undermining any suggestion that the productivity numbers relied on by Reeves were in fact inaccurate.  Nor does Plaintiff offer any evidence of temporary employees who were retained even though they were at a similar level productivity as Plaintiff.

In short, Plaintiff has provided no evidence from which a jury could find that the decision to terminate Plaintiff was pretextual.  Accordingly, the Court GRANTS

summary judgment as to the Fourth and Sixth Causes of Action, the retaliation-based claims.

## V.   CONCLUSION

IT IS HEREBY ORDERED THAT:

1. Defendant's Motion for Summary Judgment (ECF No. 30) is GRANTED.

2. The Clerk of Court is directed to enter judgment for Defendants and to close this case.

IT IS SO ORDERED.

Dated:   **September 20, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

15